UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SHARON ANN DULUDE,

    Plaintiff,

v.                                       Case No.:  6:20-cv-890-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff Sharon Ann Dulude seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint memorandum setting forth their respective positions. As explained below, the decision of the Commissioner is **REVERSED and REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    I.    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

        A.    **Social Security Eligibility**

The law defines disability as the inability to do any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

B.     **Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of

law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C.   Procedural History

Plaintiff filed an application for a period of disability and disability insurance benefits on September 15, 2016, alleging disability beginning June 1, 2015. (Tr. 91, 226-227). The application was denied initially on February 28, 2017, and upon reconsideration on April 19, 2017. (Tr. 91, 105). Plaintiff requested a hearing and

on April 9, 2019, a hearing was held before Administrative Law Judge ("ALJ") Joshua Menard. (Tr. 42-68). At the hearing, Plaintiff amended her onset date to May 1, 2016. (Tr. 46). On April 25, 2019, the ALJ entered a decision finding Plaintiff not disabled from May 1, 2016, the alleged onset date, through the date of the decision. (Tr. 25-35). Plaintiff requested review of the hearing decision, but the Appeals Council denied Plaintiff's request on March 27, 2020. (Tr. 1-6). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on May 25, 2020, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 15).

### D.     Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2021. (Tr. 27). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 1, 2016, the alleged onset date. (Tr. 27). At step two, the ALJ found that Plaintiff had the following severe impairments: "fibromyalgia; degenerative disc disease; and osteoarthritis in the bilateral hands (20 [C.F.R. §] 404.1520(c))." (Tr. 27). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 [C.F.R. §§] 404.1520(d), 404.1525, and 404.1526). (Tr. 30).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b) allowing for frequent climbing ramps and stairs; no climbing ladders, ropes, and scaffolds; frequent balancing, kneeling, and crawling; and occasional stooping and crouching.

(Tr. 30). At step four, the ALJ found that Plaintiff was able to perform her past relevant work as a chief guard, also finding this work does not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 35).

## II. Analysis

On appeal, Plaintiff raises three issues:

(1) Whether the ALJ reconciled the finding that Ms. Dulude has mild limitations in concentrating, persisting, or maintaining pace and in interacting with others with the finding that she can perform her skilled past work;

(2) Whether the ALJ properly evaluated Ms. Dulude's fibromyalgia; and

(3) Whether the ALJ properly evaluated Ms. Dulude's subjective symptoms.

(Doc. 32, p. 9, 19, 26). The Court will address each issue in turn.

### A. Whether the ALJ reconciled the finding that Ms. Dulude has mild limitations in concentrating, persisting, or maintaining pace and in interacting with others with the finding that she can perform her skilled past work.

Plaintiff argues that the ALJ failed to reconcile the finding of a medically

determinable, non-severe mental impairment of depression resulting in mild limitations in the areas of concentrating, persisting, or maintaining pace and in interacting with others with the step-four determination that Plaintiff could perform her past relevant work as a chief guard. (Doc. 32, p. 9). The vocational expert testified that Plaintiff's past relevant work entailed a specific vocational preparation ("SVP") of 6, which is a skilled job. (Doc. 32, p. 10). Plaintiff claims that even mild limitations in concentration, persistence, or pace or interacting with others preclude Plaintiff from performing her past relevant work. (Doc. 32, p. 10).

Prior to step four, the ALJ must assess Plaintiff's RFC, which is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a). It consists of a claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [a claimant] can do in a work setting." 20 C.F.R. § 404.1545(a). An ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), (3). So, the ALJ must consider *all* of a claimant's medically determinable impairments, including those that are not "severe." 20 C.F.R. § 404.1545(a)(2); *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019). "The ALJ makes this determination by considering a claimant's physical, mental, and other abilities affected by the impairment." *Id.* (citing 20 C.F.R. § 404.1545(b)-(d)). If a claimant has a limited ability to carry out

certain mental actions, such limitations may reduce a claimant's ability to do past work or other work. *Id.* "If an ALJ fails to address the degree of impairment caused by the combination of physical and mental medical problems, the decision that the claimant is not disabled cannot be upheld." *Id.* at 1269.

Recently, the Eleventh Circuit addressed this issue in *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268-1270 (11th Cir. 2019). The court remanded the case to the Commissioner, in part because "[s]evere or not, the ALJ was required to consider Schink's mental impairments in the RFC assessment but evidently failed to do so." *Id.* at 1269. Although the ALJ stated he considered all symptoms when assessing Schink's RFC, the content of the decision showed otherwise. *Id.* In the RFC portion of the decision, the ALJ's assessment discussed Schink's physical impairments at length, but only mentioned that he had bipolar disorder with no real discussion of how this impairment affected the claimant's ability to work. *Id.* The ALJ's ultimate RFC findings did not include even a single reference to Schink's mental capabilities, but instead concerned Schink's physical capabilities exclusively. *Id.* Even assuming the ALJ considered Schink's mental impairments by implicitly finding they posed no significant limitations on his work-related mental impairments, the court found this would still not permit affirmance. *Id.* An ALJ's "'failure ... to provide the reviewing court with sufficient reasoning for determining

that the proper legal analysis has been conducted mandates reversal' in its own right." *Id.* (citation omitted).

Here, the ALJ found at step two that Plaintiff's medically determinable mental impairment causes no more than mild limitations in any of the paragraph B functional areas and it is therefore non-severe. (Tr. 29). The ALJ acknowledged:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of impairments (SSR 96-8p).

(Tr. 29). Here, as in *Schink*, the ALJ explained that the step two finding is not a mental RFC for steps four and five, but he still did not discuss Plaintiff's mental limitations in these later steps. Instead, ALJ included the following discussion at the end of the step two evaluation:

> Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis. The undersigned gives great weight to the State agency psychological reviewers, J. Patrick Peterson, Ph.D., J.D. (Exhibit 7 A); and George Grubbs, Psy.D. (Exhibit 10A). These doctors found that the claimant's mental impairment is non-severe. This opinion evidence is generally persuasive. Drs. Peterson and Grubbs are mental health specialists opining about their area of expertise. Additionally, their opinions are generally consistent with the broader record in this case, or the lack thereof as discussed above (Exhibits 15F; 19F; Hearing testimony).

(Tr. 29-30). Thus, the ALJ found Plaintiff's mental impairments non-severe, but did not discuss whether the mild limitations in the areas of concentration, persistence or pace and interacting with others would cause additional limitations in Plaintiff's RFC that may preclude Plaintiff from performing her past relevant work. Even though the ALJ stated he considered all symptoms, when determining Plaintiff's RFC, the ALJ discussed only her many physical impairments but did not discuss whether mild mental limitations in these areas may cause additional work-related limitations. (Tr. 30-34). The Court cannot determine whether the ALJ followed the proper legal analysis regarding Plaintiff's mental impairments and therefore reversal is mandated. *See Schink*, 935 F.3d at 1269.

Whether severe or not, the ALJ was required to explicitly consider Plaintiff's mental-impairment limitations when assessing the RFC but failed to do so. The ALJ provided no real assessment of how Plaintiff's depression affected her ability to work. *See Schink*, 935 F.3d at 1269-1270.

> **B.     Whether the ALJ properly evaluated Ms. Dulude's fibromyalgia and her subjective complaints**

The last two issues concern Plaintiff's fibromyalgia and subjective complaints. These two issues overlap and therefore the Court will consider them together. For the fibromyalgia issue, Plaintiff argues that while the ALJ acknowledged that she was diagnosed with fibromyalgia by acceptable medical sources who reported positive trigger points, the ALJ focused on the fact that the

record lacked objective evidence as a basis to discredit Plaintiff's allegations. (Doc. 32, p. 19). Plaintiff also argues that the ALJ failed to comply with Social Security Ruling 12-2p. (Doc. 32, p. 19). Relatedly, Plaintiff argues that the ALJ improperly evaluated Plaintiff's subjective symptoms. (Do. 32 p. 26-27).

### 1. Fibromyalgia

Fibromyalgia is "characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissue that has persisted for at least 3 months. SSR 12-2p, 2012 WL 3104869, *2 (July 25, 2012). The Eleventh Circuit has recognized that fibromyalgia is a unique impairment because it "'often lacks medical or laboratory signs and is generally diagnosed mostly on a[n] individual's described symptoms.'" *Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 863 (11th Cir. 2017) (quoting *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). "Because the 'hallmark' of fibromyalgia is a 'lack of objective evidence,' a claimant's subjective complaints may be the only means of determining the severity of the claimant's condition and the functional limitations she experiences." *Id.* (citing *Moore*, 405 F.3d at 1211). An ALJ's decision is subject to reversal when the ALJ relies on lack of objective findings as a basis for an adverse decision. *Id.*

The Social Security Administration promulgated SSR 12-2p to provide guidance on how to determine whether a person has a medically determinable impairment of fibromyalgia and how it will evaluate this impairment in a disability

claim. SSR 12-2p, 2012 WL 3104869 (July 25, 2012); *Francis v. Saul*, No. 8:18-cv-2492-SPF, 2020 WL 1227589, *3 (M.D. Fla. Mar. 13, 2020). The ruling informs ALJs in how to consider fibromyalgia in the five-step process. SSR 12-2p, 2012 WL 3104869 (July 25, 2012).

The ruling requires an ALJ to consider all relevant evidence in the case and all of a claimant's medically determinable impairments, including those that are not severe when making an RFC determination. SSR 12-2p at *6. "For a person with fibromyalgia, an ALJ must consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" *Id.* An ALJ must consider widespread pain and other symptoms associated with fibromyalgia such as fatigue that may result in exertional and non-exertional limitations, which prevent a person from doing a full range of unskilled work. *Id.* If the objective medical evidence does not support a claimant's statements about the intensity, persistence, and functionally limiting effects of symptoms, then an ALJ must consider a claimant's daily activities, medications, or other treatments the person uses or used to alleviate symptoms, the nature and frequency of a claimant's attempt to obtain medical treatment for the symptoms, and statement by other people about the claimant's symptoms. *Id.* at *5.

In the decision, the ALJ focused on "a closer inspection of the objective evidence" to find the "full record is not entirely consistent with the full extent of the

subjective symptoms and limitations." (Tr. 32). He relied heavily on an "essentially unremarkable" February 2017 consultative examination by R. Craig Nielsen, M.D. (Tr. 32). At this examination, Dr. Nielsen found no fibromyalgia pressure-point pain. (Tr. 32, 458). The ALJ also found that the medical records as a whole were supportive of and consistent with the RFC, with postural and exertional limitations, in part related to Plaintiff's fibromyalgia. (Tr. 33). The ALJ continued, "[i]n particular, a light exertional framework is reasonable because of the normal or benign objective findings during this period about gait and independent ambulation, as well [as the] conservative nature and frequency of the objective abnormalities and treatment modalities. The RFC in this case is also based in part on other relevant factors. In particular, this includes parts of the subjective allegations regarding pain and fatigue." (Tr. 33).

  The ALJ apparently relied heavily on the lack of objective medical evidence, and then in some fashion considered the subjective allegations of pain and fatigue to assess the RFC. But without more, the Court cannot determine whether he properly evaluated Plaintiff's fibromyalgia impairment under legal authority and SSR 12-2p. Keeping in mind that the symptoms of fibromyalgia may wax and wane (SSR 12-2p at *6), the results of one consultative examination are not sufficient to discount Plaintiff's fibromyalgia. Over the years, Plaintiff sought treatment from Space Coast Rheumatology, and specifically from Roderick H. Salach, D.O., a rheumatologist

and Jennifer Deforge, a nurse practitioner. (Tr. 354-63, 370-72, 374-76, 462-73, 477-502). These records document that from at least February 2015, Dr. Salach considered Plaintiff's complaints of pain and stiffness in various joints and found on physical examination, "tender points multiple, greater than 11/18 winces." (Tr. 354). He assessed Plaintiff with fibromyalgia, based on positive tender points and poor sleep. (Tr. 355). From June 2017 through November 2018, Dr. Salach treated Plaintiff, finding on examination positive trigger points, musculoskeletal pain, muscle aches, lack of sleep, fatigue, and assessed fibromyalgia. (Tr. 69-72, 467, 469-70, 483-84, 487-89, 499, 500-502). On some examinations, Dr. Salach found more than just positive trigger points, he also specifically found 10 of 28 joints that were tender, swollen, and deformed. (Tr. 71, 489, 500-501).

The ALJ relied at least in part on the lack of objective medical evidence to reach his decision that Plaintiff is not disabled from fibromyalgia as of the alleged onset date. (Tr. 33). When an ALJ's relies on lack of objective findings as a basis for an adverse decision, the action is subject to reversal. *See Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 863 (11th Cir. 2017). As a result, the Court cannot determine whether the ultimate decision on the merits of the claim is supported by substantial evidence. Because the Court is remanding this matter on another issue, it will require the Commissioner to also reconsider Plaintiff's fibromyalgia impairment given all of the evidence of record.

### 2. Whether the ALJ properly evaluated Ms. Dulude's subjective symptoms

Plaintiff argues that the ALJ did not properly evaluate Plaintiff's subjective symptoms and therefore the ALJ's findings were not supported by substantial evidence. (Doc. 32, p. 26-27).

A claimant may establish that she is disabled through her own testimony of pain or other subjective symptoms. *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). In such a case, a claimant must establish:

> "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."

*Id.* (quoting *Dyer*, 395 F.3d at 1210). When evaluating a claimant's testimony, the ALJ should consider: "(1) the claimant's daily activities; (2) the 'duration, frequency, and intensity' of the claimant's symptoms; (3) '[p]recipitating and aggravating factors'; (4) the effectiveness and side effects of any medications; and (5) treatment or other measures taken by the claimant to alleviate symptoms." *Id.* (quoting 20 C.F.R. §§ 404.1529(c), 416.929(c)(3)). The ALJ must consider these factors given all of the evidence of record. *Id.* And if the ALJ discredits this testimony, then the ALJ "'must clearly articulate explicit and adequate reasons for' doing so." *Id.* (quoting *Dyer*, 395 F.3d at 1210). The ALJ may consider the

consistency of the claimant's statements along with the rest of the record to reach this determination. *Id.* "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)); *see also Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014). And an ALJ's decision will be affirmed as long as the decision is not a "broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1211 (quotation and backets omitted).

Because the Court is remanding this action in part for the Commissioner to reconsider Plaintiff's subjective complaints related to her fibromyalgia limitations, the Court will also require the Commissioner to reconsider Plaintiff's subjective symptoms as they relate to all of Plaintiff's limitations.

### III. Conclusion

The decision of the Commissioner is **REVERSED,** and this action is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider any limitations caused by Plaintiff's mental impairments given the medical and other evidence of record, reconsider Plaintiff's fibromyalgia, and reconsider Plaintiff's subjective symptoms. The Clerk of Court is directed to enter

judgment consistent with this opinion, terminate any motions and deadlines, and thereafter close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 3, 2021.

*[signature]*
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties